**EXHIBIT
1**

Filed          18-CI-03970          11/09/2018          Vincent Riggs, Fayette Circuit Clerk          NOT ORIGINAL DOCUMENT
12/05/2018 02:29:51 PM
88890-55

## COMMONWEATLH OF KENTUCKY
## FAYETTE CIRCUIT COURT
## DIVISION ____
## CIVIL ACTION NO. 18-CI-_____

**RON BRADLEY**                                                **PLAINTIFF**

### ELECTRONICALLY FILED

**VS.**                          **COMPLAINT & JURY DEMAND**

**MARRIOTT INTERNATIONAL, INC**.

**DEFENDANTS**

* * * * * * * *

NOW COMES Plaintiff, Ron Bradley, by and through his attorneys, Smith & O'Toole, PLLC, and for his cause of action states:

### NATURE OF THE ACTION

This is an action under the Kentucky Civil Rights Act KRS Chapter 344 et seq. for discrimination by Marriott International, Inc. against Mr. Bradley on the basis of his age because Marriott terminated Mr. Bradley after 36 years of service under the false pretense that he had stolen shrimp even after Marriott found out that he had not stolen the shrimp and had engaged in a pattern of conduct since Mr. Bradley's 25th anniversary with the company to reduce his income and earning opportunities by limiting the type and nature of the work he could perform based solely upon his age.

### General Allegations

1. There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the complaint.

2. Plaintiff is a resident of Lexington, Fayette County, Kentucky.

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000001 of 000021

3. Defendant, Marriot International, Inc. is a Foreign Corporation active and in good standing in the Commonwealth of Kentucky, with its Registered Agent located at 306 W. Main St., Suite 512, Frankfort, KY 40601.

4. Plaintiff was employed by Defendant for approximately 36 years from 1981 to 2017.

### Facts

5. Plaintiff was employed as a server with Defendant at the Griffin Gate Marriott a position he held for 36 years.

6. Plaintiff was an exceptional employee that earned national awards for his performance and was evaluated as either a Key contributor or Strong Performer in every single category in every review including his most recent review dated December 12, 2017. (Exhibit A)

7. During Plaintiff's review on December 12, 2017, his shift manager, Lisa Wilson noticed Plaintiff's lunch sitting next to him, commenting that it looked like cookies, but never asked Plaintiff about the shrimp, which was actually a shrimp ball prepared by Plaintiff at home and brought to work as his lunch.

8. Ms. Wilson was suspicious about Plaintiff's lunch and learned that shrimp had been served at a banquet a couple of days prior and suspected that Plaintiff's lunch was comprised of those particular shrimp.

9. A review of the security cameras revealed that Plaintiff had entered and exited the coolers where the shrimp was usually stored but gave no indication that Plaintiff had taken any shrimp on his visits to the cooler.

10. Because of the very circumstantial evidence, and without asking Plaintiff about the matter at all, Defendant suspended Plaintiff on December 13, 2017.

2

Filed          18-CI-03970     11/09/2018          Vincent Riggs, Fayette Circuit Clerk ORIGINAL DOCUMENT
                                                                                          12/05/2018 02:29:51 PM
                                                                                          88890-55

11. Plaintiff met with Nora Robinson the Restaurant Manager and department head on December 14, 2017 where Plaintiff was informed of the suspension before a witness, Otto Ramlee.

12. That very day, December 14, 2017, the shrimp that had allegedly been stolen were discovered under a salad, undisturbed and with no indication of theft.

13. Despite the discovery of the shrimp on December 14th, on December 15th or 16th when Plaintiff appealed the suspension to the Director of Operations, Dan Sirrine, upheld the suspension with recommendation of termination.

14. The suspension with recommendation of termination was upheld even though Defendant was fully aware that the banquet shrimp had been found, undisturbed and with no evidence of theft.

15. On December 18th Plaintiff met with Theona Simbrat in a last ditch effort to keep his job and during that meeting Plaintiff maintained his denial that he had taken the shrimp.

16. During the Meeting with Ms. Simbrat, Plaintiff acknowledged that he, like every other employee of Defendant, had on occasion used some ice cream or other food to make a smoothie or have a snack. This practice was universally ignored and otherwise condoned by Defendant throughout Plaintiff's 36 years with the Defendant – until this very instant.

17. On December 19th Liz Hill signed Plaintiff's termination paper stating that Plaintiff had been terminated for stealing shrimp – a knowingly false and totally unsupported allegation.

18. The termination paper signed by Ms. Hill showed a termination date of December 16, 2017, instead of December 19, which cost Plaintiff his annual review bonus which would

3

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000003 of 090021

Filed                    18-CI-03970    11/09/2018          Vincent Riggs, Fayette Circuit Clerk   NOT ORIGINAL DOCUMENT
                                                                                                    12/05/2018 02:29:51 PM
                                                                                                    88890-55

have been payable if Plaintiff was employed on December 17, 2017 and should have been between $400 and $700.

19. Defendant's decision to terminate Plaintiff after 36 years of exceptional employment occurred because of the Defendant's longstanding and consistent discrimination against older workers.

20. Defendant's practice of age discrimination goes beyond just Plaintiff's termination because Defendant took affirmative steps to drive down Plaintiff's income earning potential ever since his 25th anniversary with the company.

21. Plaintiff is 61 years of age and he, along with the only other older worker on his shift – Darlene Anderson – were discriminated against because of perceived limitations due to age, for example:

    a. Plaintiff and Darlene were only permitted to take on parties of 8 before another server was assigned to the party, whereas the younger servers were permitted to take on parties up to 15 before another server was assigned to the party. This limited earning potential for both Plaintiff and Darlene because they had to share tips with the additional person instead of being able to earn the entire amount for themselves. Only the older servers were required to do this.

    b. Plaintiff and Darlene were the only servers not on the cocktail lounge rotation because of perceived limitations due to their age. All the younger servers were given rotations in the cocktail lounge. This also limited earning potential for both Plaintiff and Darlene because the lounge shifts were more profitable for servers.

4

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000004 of 000021

Filed                18-CI-03970    11/09/2018          Vincent Riggs, Fayette Circuit Clerk    NOT ORIGINAL DOCUMENT
                                                                     12/05/2018 02:29:51 PM
                                                                     88890-55

    c. Plaintiff was denied the opportunity to work parties for very profitable clients that had specifically requested and insisted upon having Plaintiff as their server, and those opportunities were not denied to the younger employees.

22. Defendant's pattern of conduct and efforts to reduce Plaintiff's income as he aged were successful in reducing his income from a high of $57,000 annually to about $40,000 a year.

23. Defendant even went further and disputed Plaintiff's unemployment benefits – again falsely alleging that he was terminated for stealing shrimp, even though at the appeals hearing they shifted the allegation to Plaintiff's theft of ice cream and the never enforced policy.

24. The UIA allowed Plaintiff to receive his unemployment benefits and their opinion cites the Defendant's shifting and unsupported contentions regarding Plaintiff. (Exhibit B)

25. Plaintiff has been unable to find similar or suitable employment since his termination at least in part because his resume' essentially consists of one job over 36 years and he was terminated from that job, albeit unjustifiably.

**VIOLATION OF THE KENTUCKY CIVIL RIGHTS ACT KRS 344**

26. Plaintiff incorporates by reference each allegation 1 through 25 as though restated herein in their entirety.

27. Pursuant to KRS 344.040 it is unlawful for an employer to discriminate against an individual with respect to his employment and compensation because of the individual's age.

28. Defendant's acts of discrimination included, but were not limited to:

5

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000005 of 000021

Filed          18-CI-03970     11/09/2018          Vincent Riggs, Fayette Circuit Clerk   ORIGINAL DOCUMENT
                                                                    12/05/2018 02:29:51 PM
                                                                    88890-55

    a. Terminating Plaintiff because of his age although Plaintiff used the false pretense
that he was fired for stealing shrimp; and

    b. Taking specific actions against the older workers like preventing Mr. Bradley
from working the higher dollar shifts and lucrative special functions away from
Plaintiff or making Plaintiff share those functions so as to reduce his income.

    c. Replacing Plaintiff with younger staff.

29. Defendant's acts of discrimination harmed Plaintiff because he has been unable to find
suitable replacement employment since being terminated, in large part because the
demand for sixty one year old waiters in upscale restaurants that have been wrongfully
terminated for stealing is very low.

30. Plaintiff has also endured humiliation, anguish, loss of self confidence, loss of pride and
self esteem, and the dignity associated with being an able bodied person able to provide
for his own needs.

## PUNITIVE DAMAGES

31. Plaintiff incorporates by reference paragraphs 1-30 above as though fully restated herein.

32. KRS 411 184 provides that a Plaintiff may recover punitive damages upon proving, by
clear and convincing evidence, that the Defendant acted toward Plaintiff with oppression,
fraud or malice.

33. Defendant acted towards Plaintiff with fraud because Defendant represented to Plaintiff
that he was fired for stealing food, when in fact he was fired due to his age.

34. Defendant acted outrageously by following through with the allegations that Plaintiff had
stolen food even after it was proven that Plaintiff had not stolen the shrimp he was
accused of stealing.

6

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000006 of 000021

35. Defendant continued its outrageous conduct by then changing its story to the Unemployment Insurance Agency and alleged that Plaintiff was fired for stealing food, like ice cream, when that rule had not been enforced against anyone and it was a commonly accepted practice that almost all employees and managers enjoyed alike.

36. Defendants conduct subjected Plaintiff to cruel and unjust hardship.

37. At the age of 61 it is impossible to replace 36 years of service to one employer.

38. That seniority and the dedication it takes to reach that level of tenure with one company was an extraordinary source of pride for Plaintiff.

39. Defendant ripped away Plaintiffs dignity and pride by dismissing him like so much spoiled food under false pretenses.

40. Defendants conduct meets the definition of oppression because terminating Defendant under false pretenses was specifically intended by the Defendant to subject him to the loss of all those years of seniority and the pride and dignity that came with that, while leaving him with an empty resume' that makes it very difficult for him to find similar employment.

41. Defendant's conduct was specifically authorized by the employer the decision to terminate Plaintiff under false pretenses made its way all the way up the chain of command. This was not the decision of just one low level assistant manager, but of the employer.

WHEREFORE, Plaintiff prays to this honorable court:

    A. That a Judgment be entered against Defendant in an amount in excess of $5,000 for damages so wrongfully incurred plus interest and attorney's fees;

    B. Trial by jury;

7

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000007 of 000021

Filed          18-CI-03970     11/09/2018          Vincent Riggs, Fayette Circuit Clerk ORIGINAL DOCUMENT
                                                                        12/05/2018 02:29:51 PM
                                                                        88890-55

C. Pre-judgment and post-judgment interest against Defendant;

D. Any and all other relief to which Plaintiff may be entitled.

Respectfully Submitted:

/s/ *James O'Toole*

James O'Toole
Smith, O'Toole & Brooke
Attorney for Respondent
2333 Alexandria Dr.
Lexington, KY 40504
Ph: (859) 514-6072
Email: jotoole@smithotoole.com

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000008 of 000021

8

Filed          18-CI-03970     11/09/2018          Vincent Riggs, Fayette Circuit Clerk   NOT ORIGINAL DOCUMENT
                                                                                   12/05/2018 02:29:51 PM
                                                                                   88890-55

# EXHIBIT A

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000009 of 000021

Filed                18-CI-03970      11/09/2018        Vincent Riggs, Fayette Circuit Clerk   ORIGINAL DOCUMENT
                                                                                                12/05/2018 02:29:51 PM
                                                                                                88890-55

Server - Hourly/Non-Management F

## Marriott Hotels and Resorts

### *Hourly/Non-Management Performance Process*

Review Year: 2017

| Section 1: General Performance | Employee: **Ronald Bradley** |

Please review the competencies in the General Performance section below. Select the rating that best describes the employee's performance for each competency. Your rating should reflect performance since his or her last annual review.

| Performance Rating | Performance Rating Description |
|---|---|
| K - Key Contributor | Employee consistently demonstrates role model behavior in all of the key actions in the performance area |
| SP - Strong Performer | Employee consistently performs each of the key actions in the performance area and demonstrates role model behavior in one or more of the key actions |
| P - Solid Performer | Employee consistently performs each of the key actions in the performance area, but does not demonstrate role model behavior in any of the key actions |
| U - Underperformer | Employee does not consistently perform one or more of the key actions in the performance area |

| Competency | Key Actions | Rating | | | |
|---|---|---|---|---|---|
| **Problem Solving & Decision Making**<br><br>Recognizes and resolves problems. Seeks, examines, and interprets information from different sources to determine cause and develop solutions. This includes selecting the best course of action and recognizing when outside advice is needed. | • Follows through to confirm that problems/issues were resolved in a satisfactory way.<br>• Understands, promotes, and demonstrates actions consistent with company safety and security policies and procedures.<br>• Surfaces issues, problems, and opportunities for improvements.<br>• Decides on correct course of action to resolve problems.<br>• Acquires and applies new knowledge and skills to the job.<br>• Obtains information from different sources to determine cause of issue or problem.<br>• Develops alternatives to resolve problems or issues. | U | P | SP | K |
| **Contributing to Teams**<br><br>Relates well to people from diverse backgrounds. This includes being cooperative, approachable, and taking time to listen to and address others' questions or concerns; treating others with kindness, respect, and dignity. Expresses empathy and compassion when dealing with the needs and problems of others. | • Develops and sustains positive relationships with managers and coworkers.<br>• Treats others with respect, kindness, and dignity.<br>• Shows understanding and respect for the differences among individuals on the team and other departments (e.g., different ideas, capabilities, and/or cultural perspectives).<br>• Takes time to listen to and address the needs of others.<br>• Is approachable and cooperative with others.<br>• Helps others with their work to ensure team objectives are met.<br>• Completes job tasks without the need for much supervision. | U | P | SP | K |

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000010 of 000021

Filed          18-CI-03970    11/09/2018        Vincent Riggs, Fayette Circuit Clerk     NOT ORIGINAL DOCUMENT
                                                                                          12/05/2018 02:29:51 PM

Server - Hourly/Non-Management Form

| | | U | P | SP | K |
|---|---|---|---|---|---|
| **Adaptability/Stress Tolerance**<br><br>Works productively and effectively when faced with stressful work situations and time pressures. | • Adapts to new, changing, or challenging situations while keeping up with job performance.<br>• Maintains a calm and professional manner when facing high pressure and time-sensitive situations.<br>• Interacts effectively with others when faced with challenging situations.<br>• Adjusts behavior appropriately when faced with challenging or difficult working conditions. | U | P | SP | K |
| **Time and Task Management**<br><br>Manages time to ensure that the priority of the activities determines the amount of time and attention received. This includes coordinating daily activities to maximize productivity; keeping self-focused on the priorities for the day and avoiding being sidetracked by less important tasks and activities. | • Attends to the small details and accuracy of work.<br>• Coordinates activities and manages time to maximize productivity.<br>• Understands and orders priorities based on importance.<br>• Performs many work tasks at the same time effectively.<br>• Avoids being sidetracked by unnecessary distractions. | U | P | SP | K |
| **Communication**<br><br>Communicates information clearly and politely. Understands key pieces of information and follows instructions. This includes ensuring that the intended message is accurately received, waiting to respond until the person has finished making his/her point, and responding accordingly. | • Comprehends communication from others.<br>• Asks questions to ensure understanding.<br>• Communicates clearly and politely when speaking.<br>• Listens attentively to speaker. | U | P | SP | K |
| **Professional Demeanor**<br><br>Presents oneself in a professional manner, makes a good first impression, and will represent the company in alignment with its values. | • Maintains a positive, upbeat, and professional manner around all guests and co-workers.<br>• Demonstrates confidence and professionalism in vocabulary, posture, etiquette and personal appearance.<br>• Complies with dress/uniform and brand grooming standards.<br>• Maintains personal hygiene and cleanliness at work.<br>• Upholds company ethics standards and complies with all laws, policies, and procedures pertinent to the property. | U | P | SP | K |

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000011 of 000021

Marriott International, Inc.
Confidential and Proprietary Information          Server - Food and Beverage Services - Rev. 071217.2

Server - Hourly/Non-Management Form

NOT ORIGINAL DOCUMENT
12/05/2018 02:29:51 PM

## Section 2:  Brand Service Performance

Employee: **Ronald Bradley**

Select the rating that best describes the employee's Brand Service performance. Your rating should reflect performance since his or her last annual review.

| Competency | Key Actions | Rating | | | |
|---|---|---|---|---|---|
| **Customer Relations**<br><br>Provides excellent service, builds trust, anticipates and meets the needs of customers. Takes ownership of customer issues or problems and takes action to bring to quick resolution. | • Takes responsibility for ensuring uncompromising levels of guest privacy and security and creating a clean, safe, accident-free environment. Follows "clean as you go" and quickly addresses all maintenance issues.<br>• Welcomes and greets each guest warmly and with a smile, using the 15/5 rule and the guests' name.<br>• Shows respect for all guests by being considerate of individual differences in ideas, background, and cultural perspective.<br>• Uses LEARN to take ownership of each guest's problems and resolve them in a way that exceeds expectations.<br>• Anticipates guests' needs by listening and responding to cues, asking questions to learn more, and remembering guest requests and preferences.<br>• Thanks each guest for the stay (saying "Thank you for choosing Marriott").<br>• Demonstrates knowledge of local area, hotel facilities and services, and daily hotel activities.<br>• Prepares for each guest's arrival and meets the needs of our High Value Guests.<br>• Listens to guest needs, sees things from their perspective, and acknowledges their feelings.<br>• Personalizes service by taking ownership of guest's needs and recommending the right products and services.<br>• Provides genuine care by going beyond what is asked or expected, making the guests feel special and increasing their desire to come back.<br>• Talks enthusiastically and proudly about the Marriott brand and hotel, and tells others about the benefits of doing business with the hotel.<br>• Shows empathy when dealing with guest problems by listening to guest needs and acknowledging their feelings.<br>• Follows "clean as you go" and quickly addresses all maintenance issues. | U | P | SP | K |

Marriott International, Inc.
Confidential and Proprietary Information

Server - Food and Beverage Services - Rev. 071217.2

Page 5

Filed   18-CI-03970   11/09/2018   Vincent Riggs, Fayette Circuit Clerk  NOT ORIGINAL DOCUMENT
12/05/2018 02:29:51 PM

Server - Hourly/Non-Management F...

Employee: **Ronald Bradley**

## Section 3: Functional Performance

Please review the competency in the Functional Performance section below. Please rate your employee's job-specific performance by considering his or her core and job-specific skill sets. Select the rating that best describes the employee's performance since his or her last annual review. If applicable, you can use any production-oriented or department-specific goal as a basis for your rating.

| Competency | Key Actions | | Rating | | |
|---|---|---|---|---|---|
| Server | • Sets up and maintains proper food sequence, guest flow, temperature standards, labels and ingredients, and timely replenishment of items on buffet stations.<br>• Serves and refills hot and cold beverages in accordance with brand standards, within an appropriate serving time, on the correct serving side/ location on the table, with all proper garnishes.<br>• Recalls information to guests related to the preparation and presentation of menu items, specials (e.g., portion sizes, food appearance, proper dishware, garnishes), and seating arrangement.<br>• Adheres to food and beverage service standards and procedures of service time, presentation, and quality standards.<br>• Follows all policies and procedures related to handling money and maintaining the security of the cash drawer (e.g., where to keep bills during a transaction, knowledge of procedures to check counterfeit currencies, who has access to the cash drawer, securing the drawer).<br>• Recites menu items, specials, prices, preparation methods/times, major ingredients, quality standards, taste, appearance, texture, serving temperature, garnish, and method of presentation.<br>• Adheres to federal, state, and property food safety and storage/serving procedures for all menu items.<br>• Serves food to guests as ordered, delivering all items and required condiments in one trip, and checking back on table; ensures all required flatware is present prior to serving, and carries trays of food in a safe and efficient manner. | U | P | SE | K |
| Server (Job Specific) | • Refer to job-specific performance expectations as communicated in local standard operating procedures, departmental goals, production or cost-containment goals, training materials, job descriptions, and/or required certifications. Please note, this is the place to formally consider performance against property or department production-oriented goals (e.g., rooms cleaned, GSS, sales volume). Performance against such goals will provide you with highly valuable information for making a functional performance rating. | | | | |

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000013 of 000021

Marriott International, Inc.
Confidential and Proprietary Information

Server - Food and Beverage Services - Rev. 071217.2

Server - Hourly/Non-Management Form

Filed        18-CI-03970   11/09/2018        Vincent Riggs, Fayette Circuit Clerk

NOT ORIGINAL DOCUMENT
12/05/2018 02:29:51 PM
Employee: Ronald Bradley

## Section 4: STARs

Develop and document at least one STAR for each performance area. Recording STARs will help you explain the ratings that you have given to your employee. The STARs you provide should do three things: 1) represent typical employee behavior, 2) support the performance rating you made in each area, and 3) be within the employee's rating period.

| Performance Area | Situation/Task | Action | Result |
|---|---|---|---|
| **General Performance** Competencies and key actions that all employees are expected to demonstrate. | Ron is very professional and adheres to all of Marriott's policies. | He takes the time to make sure everything is up to standard and teaches all of our new employees the importance of keeping everything in top shape. He is very professional when it comes to his job and it shows when we have new staff because he trains them on the proper procedures. This is not just for cleanliness, but also for how to properly serve wine. | As a result of Ron's professionalism, we know that our new servers will be trained properly and that our regulations will be followed. |
| **Brand Service Performance** Specialized Customer Orientation key actions that are specific to your brand. | Ron is our most mentioned server in our guest surveys. | Ron has received a lot of gold bars in recognition of his name being mentioned in a guest survey. The guests love how Ron takes care of them when they come in to dine with us and they appreciate his attention to detail. He makes sure to personalize every guest interaction and is always wanting to make sure guests receive extra attention when they are celebrating their birthdays or anniversaries. | By taking care of our guests and wowing them, Ron is helping to boost our service scores and ensure that we get repeat guests. |
| **Functional Performance** Specific key actions that should be performed by an employee in the selected job. | Ron has a great knowledge of wine and bourbon. | He is always able to recommend which wine he thinks a guest will like best by asking them questions and trying to get an understanding of what their preferences are. Ron is also very good at getting guests to try one of our many bourbon offerings. He is great at recommending which bourbons to try and going over the story of how we created our own Private Select that we have. | By being so knowledgeable, Ron is upselling and getting his average checks higher which in turns helps our sales as well as his tips. |

Marriott International, Inc.
Confidential and Proprietary Information

Server - Food and Beverage Services - Rev. 071217.2

Page 5

Server - Hourly/Non-Management Form

Filed        18-CI-03970   11/09/2018   Vincent Riggs, Fayette Circuit Clerk   ORIGINAL DOCUMENT
12/05/2018 02:29:51 PM
Employee: **Ronald Bradley**

## Section 5:   General Comments

Use the Supervisor/Manager Comments space to record additional comments or observations that support your overall evaluation of this employee. Your comments can address any Performance Area covered on this form, including comments about their progress towards production-oriented goals (if applicable). You may also use this section to document a personal development plan for this employee. When you print or save this form, you can give your employee the opportunity to provide any of their own comments in the Employee Comments box.

### Supervisor/Manager Comments

We are proud to have Ron continue to be a part of our team as he continues to be one of our best servers. His guests are always pleased with him professional demeanor and we appreciate his hard work and dedication to Marriott.

### Employee Comments

Marriott International, Inc.
Confidential and Proprietary Information

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000015 of 000021

Server – Hourly/Non-Management Form   11/09/2018   Vincent Riggs, Fayette Circuit ORIGINAL DOCUMENT

12/05/2018 02:29:51 PM

## Overall Score Calculation

**Employee: Ronald Bradley**

### Instructions

1. Below you should see the ratings you selected for each Performance Area as well as the final overall performance rating.

2. Follow your property's process for either entering the overall score into the Manager Zone on myHR or submitting scores to your property's HR Representative.

| Performance Area | Score |
|---|---|
| **General Performance** | |
| Problem Solving & Decision Making | SP |
| Contributing to Teams | SP |
| Adaptability/Stress Tolerance | SP |
| Time and Task Management | K |
| Communication | SP |
| Professional Demeanor | K |
| **General Performance Score** | **SP** |
| **Brand Service Performance** | **K** |
| **Functional Performance** | **SP** |
| **Overall Performance** | **SP** |

### Overall Performance Rating

If you printed a blank form and need to calculate your overall scores, please return to the HPP tool and click on the "Calculate Ratings" button. Put the final rating (K, SP, P, U) in the space provided on the table above.

| Employee Name: (Print) | (Signature) | (Date) |
|---|---|---|
| Ronald Bradley | *Ron Bradley* | 12-12-17 |

| Manager Name: (Print) | (Signature) | (Date) |
|---|---|---|
| Lisa Wilson | *L Wilson* | 12-12-17 |

| Supervisor Name: (If Applicable): (Print) | (Signature) | (Date) |
|---|---|---|
| | | |

Marriott International, Inc.
Confidential and Proprietary Information

Server - Food and Beverage Services - Rev. 071217.2

Page 7

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000016 of 000021

Filed
18-CI-03970        11/09/2018
Vincent Riggs, Fayette Circuit NOT ORIGINAL DOCUMENT
12/05/2018 02:29:51 PM
88890-55

# EXHIBIT B

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000017 of 000021

Filed        18-CI-03970   11/09/2018        Vincent Riggs, Fayette Circuit Clerk  NOT ORIGINAL DOCUMENT
                                                                         APR 1 0 2018 5/2018 02:29:51 PM

CO# 140534A            AD# 18-58691 A            MAILED    APR 1 0 2018
SS# XXXXXXXXXX         REC'D 03-06-18 JG         COUNTY FAYETTE        88890-55
LO# 60

COMMONWEALTH OF KENTUCKY
KENTUCKY UNEMPLOYMENT INSURANCE COMMISSION
FRANKFORT

APPELLANT                           APPELLEE

RONALD BRADLEY                      MARRIOTT HOTEL SERVICES
3125 PARIS PIKE                     C/O EQUIFAX
LEXINGTON KY 40511                  PO BOX 182366
                                    COLUMBUS OH 43218

## ORDER REVERSING

The claimant appeals from a referee decision mailed February 20, 2018, which held benefits were not payable from December 10, 2017, through the duration of the subsequent period of unemployment, on a finding of discharge for reasons of dishonesty connected with the employment. An overpayment of $2,240.00 was established on the claim. The employer's reserve account was relieved of charges.

## FINDINGS OF FACT

The claimant began working for the employer on September 17, 1981. He worked full time in Lexington, Fayette County, Kentucky, as a restaurant server being paid $2.35 per hour. He last worked on December 14, 2017.

The claimant brought his lunch, shrimp and rice, to work on December 12, 2017, wrapped in Saran wrap so he would have no dirty dishes to take home. Ultimately, the claimant did not eat the shrimp and rice and retrieved it before leaving work for the day. Lisa Wilson, supervisor, approached the claimant and noticed shrimp in the Saran wrap but did not question the claimant or examine the contents further. Ms. Wilson performed the claimant's performance review and the claimant left work.

Ms. Wilson reported the claimant being in possession of shrimp to the general manager and Elizabeth Hill, director of human resources. The employer began an investigation into the matter as the employer had hosted a banquet on December 11, 2017, and there was supposed to be leftover shrimp; however, the employer could not locate the shrimp. The employer questioned the claimant and the claimant denied stealing shrimp and explained he had brought the shrimp for his lunch. The claimant was suspended on December 14, 2017, pending the outcome of the investigation. On this same day, a coworker found the leftover shrimp from the banquet in the cooler.

The employer's policy provides that workers are not to eat food without a ticket or payment. Violation of this policy results in disciplinary measures up to, and including, discharge. The claimant most recently signed his acknowledgment of the employer's policy less than two years prior to being discharged. Sometimes the employer brought leftover food to the breakroom for all associates to eat without payment, and this was not considered a violation of the employer's policy.

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000018 of 000021

COM : 000018 of 000021

Filed          18-CI-03970      11/09/2018          Vincent Riggs, Fayette Circuit Clerk   NOT ORIGINAL DOCUMENT
                                                                                      12/05/2018 02:29:51 PM
                                                                                      88890-55

RONALD BRADLEY
SS# ***-**-****
PAGE TWO

Throughout the claimant's employment, kitchen workers fixed and ate meals in the cafeteria on a daily basis without a ticket or payment, and restaurant workers ate from the buffet without a ticket or payment. During the investigation, the employer learned from the claimant that he had eaten a bowl of ice cream without a ticket or payment. The employer also believed the claimant had taken shrimp from the cooler. On December 17, 2017, Ms. Hill discharged the claimant for violation of the employer's policy prohibiting taking food without a ticket or payment. The claimant was advised that he was discharged for theft/attempted theft.

## APPLICABLE LAW

KRS 341.370(1)(b) and 341.530(3) combine to provide for the imposition of a duration disqualification from receiving benefits, and granting of reserve account relief to the employer, when a claimant has been discharged from the most recent employment for reasons of **misconduct or dishonesty connected with the work**. (Emphasis added.)

KRS 341.370(6) states, " 'Discharge for misconduct' as used in this section shall include but not be limited to separation initiated by an employer for falsification of an employment application to obtain employment through subterfuge; **knowing violation of a reasonable and uniformly enforced rule of an employer**; unsatisfactory attendance if the worker cannot show good cause for absences or tardiness; damaging the employer's property through gross negligence; refusing to obey reasonable instructions; reporting to work under the influence of alcohol or drugs or consuming alcohol or drugs on employer's premises during working hours; conduct endangering safety of self or co-workers; and incarceration in jail following conviction of a misdemeanor or felony by a court of competent jurisdiction, which results in missing at least five (5) days work." (Emphasis added.)

The employer bears the burden, in a discharge case, to prove misconduct by a preponderance of the evidence. *Brown Hotel Co. v. Edwards*, 365 S.W.2d 299 (Ky. 1962).

KRS 341.430(1) gives the Commission authority to affirm, modify, or set aside any decision of a referee on the basis of the evidence previously submitted. 787 KAR 1:110 Section 2 (2)(a) and (4)(a) combine to give the Commission authority to hear all appeals upon the records of the division and the evidence and exhibits introduced at the referee hearing; and to make a separate findings of fact, decision and reasons therefore, if the Commission disagrees with the referee in these matters.

The Kentucky Court of Appeals, in *Burch v. Taylor Drug Store, Inc.*, 965 S.W.2d 830 (Ky.App. 1998), held that the above cited statute and regulations give the Commission the authority to conduct a de novo review of cases under appeal, and to judge both the weight of the evidence and the credibility of the witnesses. Further, in *Thompson v. Kentucky Unemployment Ins. Comm'n*, 85 S.W.3d 621, 626 (Ky.App. 2002), the Kentucky Court Of Appeals held that "As the fact-finder, the KUIC has the exclusive authority to weigh the evidence and the credibility of the witnesses."

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000019 of 000021

Filed        18-CI-03970    11/09/2018        Vincent Riggs, Fayette Circuit Clerk ORIGINAL DOCUMENT
                                                                12/05/2018 02:29:51 PM
                                                                88890-55

RONALD BRADLEY
SS# XXX-XX-XXXX
PAGE THREE

## REASONS

The employer discharged the claimant and therefore has the burden of proof. The record indicates the claimant was discharged for violation of the employer's policy prohibiting workers from taking/eating food without a ticket or payment. It must be determined if the violation was work-related misconduct. If shown to be misconduct, the claimant will be disqualified from benefits on these grounds. If misconduct is not shown, the claimant will be qualified for benefits on these grounds.

KRS 341.370(6) contains a list of behaviors considered misconduct. One example is a "knowing violation of a reasonable and uniformly enforced rule of an employer."

There is insufficient evidence to establish that the claimant actually took shrimp from the workplace. The claimant denied the allegation. The fact that the shrimp were later discovered in the employer's cooler, after the claimant had been suspended and had not been present at work, lends credence to the claimant's testimony that he did not take the shrimp. Accordingly, the Commission finds the claimant did not take the shrimp and he is not disqualified on this basis.

Additionally, the employer did not challenge the claimant's testimony that throughout his employment, restaurant and kitchen workers ate food from the employer daily without a ticket or payment. Although the employer had a policy in place, said policy must be uniformly enforced to succeed in showing work-related misconduct, as set forth in the statute. An employer cannot allow some workers to eat food without a ticket or payment and then discharge another for eating a bowl of ice cream, and expect its rule to be considered uniformly enforced for unemployment insurance purposes.

Although the employer's policy may have been reasonable, and the claimant knew the policy, the policy was not uniformly enforced when applied to the claimant, which is a requirement of the statute. Therefore, the claimant cannot be found to have violated the employer's pertinent policy and is not disqualified on this basis.

The evidence of record indicates that throughout the claimant's employment of approximately thirty-six years, the restaurant and kitchen staff was allowed to eat the employer's food on a regular basis, without a ticket or payment, with no repercussions. The claimant ate a bowl of ice cream believing he was allowed to do so, and the employer had condoned this type of behavior in regards to all kitchen and restaurant employees for years. Under these circumstances, the claimant's actions do not rise to the level of dishonesty connected to the work. Additionally, the fact that he mentioned eating a bowl of ice cream during the employer's investigation, when he was being asked about taking shrimp, further indicates the claimant's intentions were not dishonest. There is no evidence of probative value indicating the claimant's behavior was dishonest in nature and he will not be disqualified on these grounds.

Because the employer has failed to meet its burden of proof, as required by *Brown Hotel*, the claimant must prevail.

The claimant, in an appeal to the Commission, has attempted to enter documentary evidence. Such evidence will not be considered since it was not presented until after the referee hearing and it is not, therefore, properly a part of the record.

Filed        18-CI-03970    11/09/2018        Vincent Riggs, Fayette Circuit Clerk

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000020 of 000021

Filed          18-CI-03970    11/09/2018        Vincent Riggs, Fayette Circuit Clerk ORIGINAL DOCUMENT
                                                                                    12/05/2018 02:29:51 PM
                                                                                    88890-55

RONALD BRADLEY
SS# ~~XXX-XX-XXXX~~
PAGE FOUR

## DECISION

WHEREFORE, the Commission, having reviewed the record and being fully advised, REVERSES the referee decision. It is now held that the claimant was discharged from the employment for reasons other than misconduct or dishonesty connected with the work and is not disqualified from receiving benefits. The overpayment is hereby nullified. The employer's reserve account is denied relief from charges based on the separation issue.

The full Commission concurs.

jg

Brad Montell
Chairman

Katherine A. Forgy
Associate Commissioner

Alan Keck
Associate Commissioner

## APPEAL RIGHTS

An Order of the Kentucky Unemployment Insurance Commission may, within twenty (20) days of the mailing date of the Order, be appealed, to the appropriate Circuit Court, under the provisions of KRS 341.450(1), which provides:

"(1) Except as provided in KRS 341.460, within twenty (20) days after the date of the decision of the Commission, any party aggrieved thereby may, after exhausting his remedies before the Commission, secure judicial review thereof by filing a complaint against the Commission in the Circuit Court of the county in which the claimant was last employed by a subject employer whose reserve account is affected by such claims. Any other party to the proceeding before the Commission shall be made a defendant in such action. The complaint shall state fully the grounds upon which review is sought, assign all errors relied on, and shall be verified by the plaintiff or his attorney. The plaintiff shall furnish copies thereof for each defendant to the Commission, which shall deliver one (1) copy to each defendant."

If benefits are denied by this Order, and further appeal to Circuit Court is initiated, claimants should continue to report to the local office and claim benefits.    UI-446 (rev/96)

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000021 of 000021

AOC-E-105   Sum Code: CI
Rev. 9-14

Commonwealth of Kentucky
Court of Justice   *Courts.ky.gov*

CR 4.02; Cr Official Form 1



**CIVIL SUMMONS**

NOT ORIGINAL DOCUMENT
12/05/2018 02:26:54 PM
88890-55

Case #: **18-CI-03970**
Court: **CIRCUIT**
County: **FAYETTE**

---

*Plantiff,* **BRADLEY, RON VS. MARRIOTT INTERNATIONAL, INC.**, *Defendant*

TO: **MARRIOTT INTERNATIONAL, INC.**
   **1800 NEWTOWN PIKE**
   **LEXINGTON, KY 40511**

Memo: Registered Agent of Service exists.

The Commonwealth of Kentucky to Defendant:

   You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

Vincent Riggs

Fayette Circuit Clerk
Date: **11/9/2018**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

   To: _____

☐ Not Served because: _____

Date: _____, 20_____

_____
Served By

_____
Title

Summons ID: @00000829645
CIRCUIT: 18-CI-03970 Certified Mail
BRADLEY, RON VS. MARRIOTT INTERNATIONAL, INC.



Page 1 of 1

*e*Filed

Presiding Judge: HON. PAMELA GOODWINE (622212)

CI : 000001 of 000001

AOC-E-105     Sum Code: CI
Rev. 9-14

Commonwealth of Kentucky
Court of Justice    *Courts.ky.gov*

CR 4.02; Cr Official Form 1



**CIVIL SUMMONS**

NOT ORIGINAL DOCUMENT
12/05/2018 02:27:07 PM
Case #: **18-CI-03970**
88890-55
Court:   **CIRCUIT**
County: **FAYETTE**

<div style="float:right">Presiding Judge: HON. PAMELA GOODWINE (622212)</div>

*Plantiff,* **BRADLEY, RON VS. MARRIOTT INTERNATIONAL, INC.**, *Defendant*

TO:  **CT CORPORATION SYSTEM**
      **306 W. MAIN ST.**
      **SUITE 512**
      **FRANKFORT, KY 40601**

Memo: Related party is MARRIOTT INTERNATIONAL, INC.

The Commonwealth of Kentucky to Defendant:
**MARRIOTT INTERNATIONAL, INC.**

   You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on
the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney
on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be
taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the
document delivered to you with this Summons.

Vincent Riggs

Fayette Circuit Clerk
Date: **11/9/2018**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: _____

☐ Not Served because: _____

Date: _____, 20_____

_____
Served By

_____
Title

Summons ID: @00000829646
CIRCUIT: 18-CI-03970 Certified Mail
BRADLEY, RON VS. MARRIOTT INTERNATIONAL, INC.



Page 1 of 1

*e*Filed

CI : 000001 of 000001